Harth v. De Shazo.

No. 23,547.

ALLIE V. HARTH, *Appellant*, v. BERTHA M. DE SHAZO, *Appellee*, et al.

SYLLABUS BY THE COURT.

ACTION TO SET ASIDE DEED AND TRANSFER OF PERSONAL PROPERTY—*No Undue Influence Shown—Transfers Completed by Delivery.* In an action by an heir of a deceased person to set aside a deed to real estate and transfers of personal property executed when she was seventy-eight years of age and by which she made a gift of real estate to her granddaughter, sister of the plaintiff, it is *held,* no fiduciary relation existed between the grantee and the grantor at the time the transfers were executed; and that there was evidence sufficient to show that the transaction was fair, conducted without undue influence of the grantee, and that the transfers were completed by delivery.

Appeal from Rawlins district court; WILLARD SIMMONS, judge. Opinion filed November 4, 1922. Affirmed.

*Earl E. Howard,* of Atwood, and *William S. Langmade,* of Oberlin, for the appellant.

*C. A. P. Falconer,* of Atwood, and *E. E. Kite,* of St. Francis, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff and the defendant are sisters, grandchildren and the only heirs at law of Amanda V. Orr, who died in 1918, intestate. She had been the owner of real estate consisting of houses and lots in Atwood of the value of about $1,800, personal property consisting of $4,500, in United States bonds, a promissory note secured by a mortgage on real estate, and a small amount of money. About eight months before her death she made a deed of her real estate, a bill of sale of her personal chattels and assigned the note and mortgage to the defendant, Bertha M. De Shazo, the stated consideration being love and affection and valuable services rendered. Plaintiff attacked the validity of the transfers, alleging undue influence exercised over the grantor by the defendant, and that the instruments were not delivered nor the transfers consummated during the lifetime of the grantor. She asked that the instruments be canceled and that she be held the owner of an undivided one-half interest in the property, and for partition and an accounting.

The answer alleged that at the time of her death Amanda V. Orr did not own the real estate mentioned but had conveyed the same

by general warranty deed to the defendant, that the deed was delivered at the time of its execution, and that defendant had ever since been in possession and control thereof. It alleged that at the time the deed was executed and the various transfers of property made, Amanda V. Orr was fully capable and knew the nature and character of the business she was transacting, and that the transfers were the free, voluntary, intelligent acts of the grantor, without any persuasion or influence of the defendant.

At the close of the testimony the court rendered judgment for the defendant, from which plaintiff appeals.

The plaintiff neither in the brief nor abstract assigns any errors. The appeal raises mere questions of fact upon which there was, at most, only a conflict in the evidence. The plaintiff's abstract omits all reference to the testimony of eight witnesses called by defendant who gave testimony favorable to the defendant's contentions. It is true, as suggested, that the evidence shows without any dispute that Mrs. Orr had been in poor health for the last two years of her life; that she had frequent severe spells of sickness; and there was some evidence to sustain a finding that she had become a morphine addict as a consequence of taking the drug to relieve her suffering. But it is insisted in the brief that the evidence shows without dispute that Mrs. Orr during the last year of her life was so weak physically and mentally as to be incapacitated from transacting business or making the deed and transfers in question. To this contention we cannot agree. The testimony of the witnesses for both sides is to the effect that Mrs. Orr was a woman of keen intellect, of strong character, a remarkably bright woman, with very decided ideas and opinions of her own; that she was of the domineering type, not easily influenced by anyone, and usually had her own way about matters; she was well read, and except when under the influence of narcotics, took a lively interest in current events. She possessed a practical knowledge of business matters and understood her own business affairs. It is true her physician testified that her mental condition, while splendid for a woman of her age, was all right except when she was under the influence of the drug she became addicted to, but that when she was not under its effects she was a woman not easily controlled or influenced, and very fixed in her opinions. During the last two or three years of her life she suffered at intervals with neuralgia of the stomach and biliary colic and she took morphine to relieve her pain from these attacks.

The plaintiff testified that she visited her grandmother in July, 1917, just prior to the making of the deed, and that her grandmother talked intelligently during this visit. "She talked, of course just as she always did, only weaker." The plaintiff had never lived with her grandmother. Bertha had lived with her almost continuously from 1913 until May, 1917. Bertha was teaching school in Atwood and left in June, 1917, and attended school in Denver, Colo. About the middle of August, she returned because her grandmother had Mr. Robinson, who looked after her business, write asking Bertha to come home and fix up some business matters. She testified that at the time she was there in August she stayed for a week, that her grandmother was in her usual physical and mental condition and knew and understood the nature and extent of a business transaction; that her grandmother never took opiates except during illness, and that during the last sickness she was confined to her bed no more than two weeks and was rational and intelligent except during the last three days. Mr. Robinson, a real-estate agent, had transacted business for Mrs. Orr from the time of her husband's death; he made loans for her, collected rents and deposited money to her credit. There was some evidence offered by plaintiff of witnesses who testified to conversations with Mrs. Orr at various times, in which she expressed an intention of dividing her property between her two grandchildren. There was other testimony, however, that Mrs. Orr stated that Mrs. Harth had never done anything for her, and that she also felt hurt because the plaintiff did not visit her oftener, and statements to the effect that she had not earned any right to share in the property. Robinson testified that he and Bertha urged Mrs. Orr to give plaintiff a part of her property; that Mrs. Orr said the plaintiff had not earned it; that she did not decide fully on the matter that night, but the next day when the transfers were made to defendant Mrs. Orr set aside or arranged to give plaintiff bonds to the amount of $500.

We think the evidence fails to show the existence of a fiduciary relation between the defendant and her grandmother; and also that there was evidence sufficient to sustain a finding that the deed was actually delivered to the defendant, and that the personal property was placed in her control. After the defendant went back to Denver she did not return until late in December. The evidence shows that it was during this visit that Mrs. Orr talked about converting her

certificates of deposit into government bonds and taking them in the name of Bertha. Robinson testified that she told him she had made the transfer and had delivered the bonds to Bertha. The evidence of the bankers who had charge of the papers tended to sustain this contention.

The record presents a case very similar to *Shell v. Mulligan*, 103 Kan. 185, 173 Pac. 286. And in this connection see also, *Golder v. Golder*, 102 Kan. 486, 170 Pac. 803.

The burden rested on plaintiff to establish the claims set up in her petition. While there was some evidence to sustain her contention, there was more to uphold the judgment of the trial court. The judgment is affirmed.