No. 28,746.

LEWIS STUNKEL, *Appellant,* v. MAUD S. STAHLHUT et al., *Appellees.*

(277 Pac. 1023.)

Opinion filed June 8, 1929.

*P. D. Gardiner* and *A. W. Hershberger,* both of Wichita, for the appellant.

*George McGill, H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *William Getto McDonald,* all of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a son to set aside a division of property made by his mother a month before her death. He was defeated, and appeals.

Louise Stunkel was the widow of Henry Stunkel, who died in 1916. They had seven children: Lewis Stunkel, Edward Stunkel, George Stunkel, Maud Stahlhut, Macy Watson, Myrtle Hurst and Minnie Carl. Henry Stunkel left a will, but after his death his property was partitioned by agreement among his widow and children, the widow taking a child's share only, and the children of George taking what would have been his share but for his death. Louise Stunkel died on August 22, 1922. On July 24 and 25, 1922, she divided a large part of her property as nearly equally as possible among Edward, Maud, Macy, Myrtle, Minnie, and the children of George, who were given one share. Two of the children were minors, and

were represented in the division transaction by their mother, Ruth, who was their guardian. The property divided consisted chiefly of government bonds and other bonds, bank stock and other corporate stock, and real-estate mortgages and other securities. As a portion of his share, Edward received real estate valued at $2,000, which was conveyed by deed duly executed and acknowledged by Mrs. Stunkel. She duly indorsed and assigned instruments requiring indorsement and assignment as a means of transfer. Lewis was not given anything.

Lewis applied for letters of administration on his mother's estate, and discovered that his sister Maud had been appointed administratrix and had filed an inventory of property to the amount of $3,123.95. Lewis then applied to the probate court for an order requiring an additional inventory. The application was denied, but on appeal to the district court that court required the administratrix to file an additional inventory embracing property to which adverse claims were made. This was done. An itemized statement of the property received by each person as the result of the division was returned under oath, and the adverse claims were indicated. Presumably the order was made and complied with pursuant to the practice discussed in the case of *Hartwig v. Flynn*, 79 Kan. 595, 100 Pac. 642, and kindred cases.

After the supplemental inventory was filed, Lewis commenced an action against the administratrix and his coheirs to set aside the division and to restore the divided property to the estate for administration in the probate court. The petition pleaded death of Louise Stunkel, intestacy, and succession of heirs whose interests were stated; appointment of Maud Stahlhut as administratrix, and the fact that the estate was in course of probate; inventory by the administratrix, and supplemental inventory returned under order of court; grounds of invalidity of the division of property whereby Lewis was excluded from sharing his mother's estate; and refusal of the administratrix to bring a proper action to restore the divided property to the estate. The petition concluded with the following prayer:

"Wherefore and by reason of the foregoing, plaintiff prays that the purported division of the property and effects of the said Louise Stunkel, deceased, be set aside and held for naught; that all of said property be by the court decreed to be the property of the estate of the said Louise Stunkel, deceased, and that it be administered as such; that said estate be by the court ordered to be

administered according to law, and that this plaintiff be decreed to be entitled to an equal one-seventh interest therein; that the defendants be ordered to forthwith deliver up all of the estate property or the value thereof, to be administered according to law; that the purported warranty deed hereinbefore referred to in connection with said purported division be forever set aside and held for naught, and that said plaintiff be by the court decreed to be the owner of an undivided one-seventh interest therein.

"That, in the event it be found and determined by the court that said real property cannot be recovered as a part of the assets of the estate, and division thereof made, it be ordered and decreed that the value thereof, to wit, two thousand dollars ($2,000), be charged against the distributive share of Edward Stunkel."

Answers were filed, a trial was had, and a jury returned answers to special questions to the effect that when Louise Stunkel divided her property she was not mentally capable of understanding the nature and effect of the transaction, was not free from undue influence, and made no gifts of her property. On motion of defendants the court set aside the findings of the jury and ordered a new trial. Defendants filed an amended answer and the case again came on for trial. Plaintiff demanded a jury. The matter of calling a jury in an advisory capacity was discussed. Counsel for plaintiff stated a jury in that capacity was not desired, and insisted on a jury trial as a matter of right. The court ruled it would hear and determine the issues without a jury. At the conclusion of the evidence the court found generally for defendants, and returned special findings of fact and conclusions of law on which judgment was rendered for defendants.

Plaintiff complains because he was denied a jury trial. The civil code contains the following provision:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived or a reference be ordered as hereinafter provided. All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury or referred as provided in this code." (R. S. 60-2903.)

So far as the action was one to set aside the deed to Edward Stunkel, or to charge his distributive share of the estate with the sum of $2,000, the action was purely equitable. Plaintiff neither alleged nor prayed for damages, and could not do so. If the division of personal property was ineffective, Louise Stunkel died seized of all the property, title to all of it vested at her death in her administratrix, and the administratrix would be charged with it and held

accountable for it. On settlement of the estate, plaintiff would be entitled to his distributive share, but not to damages for conversion. Plaintiff did not sue for and could not recover any specific article of personal property. All the articles belonged to the administratrix for purpose of administering the estate. On distribution the probate court might make division in kind, but until distribution plaintiff had no enforceable claim to any specific article. All this is elementary, and the action was the familiar one in which an heir interposes to secure due administration of the decedent's estate because the administrator neglects or refuses to reduce assets to possession, or otherwise fails to discharge official duty. Similar suits are permitted to shareholders in corporations, beneficiaries of trusts, and others.

Exclusive jurisdiction to administer the estate was vested in the probate court. The district court, however, had ancillary equitable jurisdiction to remove an obstruction to administration of the estate by the probate court, the obstruction consisting of a disposition of property by the decedent in fact ineffectual but recognized as effective by the administratrix. The subject is fully discussed and authorities are quoted and cited in the opinion on rehearing in the case of *Hillman v. Young,* 64 Ore. 85, a case in which heirs sued to set aside a gift of property by their ancestor. In the opinion the court said:

"Subject to the exception to be mentioned, the general rule is that only the executor or administrator can litigate for the recovery of the property belonging to his decedent's estate. The title to such property inuring to the heir must come through the personal representative of the deceased owner. An exception, however, exists when the representative himself by collusion with the debtor or otherwise obstructs the natural course which the law establishes for the transmission of the estate to the heir. Under such circumstances, the latter may join as defendants both the personal representative of his ancestor and the person from whom is due the debt or duty to the estate, and by a suit in equity reduce to the possession of the person administering the estate the assets thus outstanding, so that they may be included in the process of winding up the affairs of the decedent. Such litigation is in aid and not in derogation of the operation of the law of descents and distribution. In other words, while the personal representative, if he will, may exercise exclusively the power of reducing to possession the effects of the estate, yet, if he will not act, that prerogative may for the time being pass from him to the heir to be used for the benefit of the estate, to the end that the lawful course of descent and distribution may not be hindered or impeded." (p. 89.)

In actions of this character it makes no difference that title to property is involved, or that title depends on presence or absence of

mental incapacity or undue influence. The essential character of the action controls, and the nature of the action is such that plaintiff can recover nothing. What he obtains is a decree establishing a condition of the estate which would have existed had the administrator exercised his power with respect to assets. The decree is framed to accomplish the desired result. It may cancel instruments of title, may require delivery of property, and may require payment of money. (*Rowell v. Rowell,* 122 Wis. 1, 10.) But it is a decree of a court of equity, and not a judgment of a court of law in an action triable by jury as a matter of right.

Plaintiff contends that, although a new trial was granted, no new trial was permitted. The contention sticks in the bark of phrase and form, and does not penetrate to substance. When the findings of the jury were set aside, the case was still in court for further proceedings. When the court determined to dispose of the case without a jury, there was no need or reason for putting witnesses back on the stand to repeat their stories, for reintroduction of documentary evidence, or for otherwise reproducing what was already in the record. So the court said it would not be necessary to reintroduce evidence which had been introduced, but the parties might make such additional proof as they desired. Plaintiff had no additional proof to offer. Defendants did introduce additional evidence. Plaintiff introduced evidence in rebuttal, and rested, and he makes no contention now that his whole case was not before the court. The result is, the court is to be commended for its sensible, practical, timesaving and expense-saving method of reaching a submission of the cause.

Plaintiff contends the court misplaced the burden of proof. The division of property was challenged on the ground of mental incapacity of the donor, and undue influence practiced upon her, especially by Maud Stahlhut, who had looked after Louise Stunkel's business affairs for a considerable period before her death. Of course, plaintiff was obliged to go forward first in the offer of proof. The court concluded an instruction to the jury relating to undue influence with the statement that the burden rested on the one urging it to prove it by a preponderance of the evidence. The instruction was correct as far as it went. But the court refused to give a requested instruction that when a person who enjoys a confidential relation to a grantor who is old, sick, and infirm, receives a gift from the grantor, the burden rests on the recipient to show the gift was made without undue influence. Plaintiff contends, there-

fore, that when the court decided the case, it did so under a misconception of burden of proof. The findings of fact show the decision was made without regard to states of evidence involving shifting of burden of proof. Plaintiff was not defeated because the court considered he failed to produce sufficient evidence to show undue influence. The court found affirmatively from the evidence that Louise Stunkel was a woman of mental power, good business ability, strong opinions, sound mind, and alert mentality; and that, knowing and understanding the nature and effect of what she was doing, she was not influenced in disposing of her property, but made the disposition because of her desire to do so, and made delivery of the necessary papers transferring title in accordance with her own desire and intention.

This is what occurred: Louise Stunkel concluded she would not make a will, but would divide her property before her death. She also concluded, for good reasons disclosed by the testimony, that Lewis should not share in the division. The property was to be divided equally among the other children, Edward to have the home place. Mrs. Stunkel was afflicted with cancer of the stomach. On a Friday the doctor told her she could not recover, and if she had any business matters to arrange it would be well to do so. She immediately sent for one of her daughters, and on Friday evening told the daughter to have her children come home on the next Sunday, that she wanted to divide her property and fix her business, and she wanted to divide up the property right away. On Sunday afternoon members of the Stunkel clan gathered at the bedside of Mrs. Stunkel. There were two beds in her room. She lay on one. A suitcase of documents was emptied on the other, and the business of dividing the property was commenced. It was a difficult task to make division of securities of different kinds and amounts into six fairly equal parts, and the division was not completed on Sunday. On Monday the interested parties returned, and the business was finished as far as possible. For example, a certificate for forty-eight shares of bank stock was subsequently turned in and six certificates for eight shares each were procured and distributed. On Monday the banker of a near-by town was brought out, who did the necessary notarial work and witnessed Mrs. Stunkel's signatures. Household goods were not divided.

Lewis was not present on Sunday and Monday, July 24 and 25. In March his house burned and he moved over to his mother's. She

was in a hospital in Wichita, recovering from an operation. She was brought home on April 12. On the morning of June 12, his mother having gotten worse in the meantime, Lewis put his family in an automobile and left for Texas without bidding his mother goodbye. Afterwards he made a trip to Kansas and to the neighborhood, and did not go to see his mother, although he was told she was very low.

Plaintiff picks out circumstances which have been important in undue influence cases, and urges them as conclusive here. For example, Ed Stunkel brought the notary from town and took him back. The testimony of one of plaintiff's witnesses disclosed that the notary was chosen by the group in the course of the division transaction.

Plaintiff says it did not appear that Mrs. Stunkel had independent advice. The statute relating to independent advice concerning wills applies to the single case of a will written or prepared by a beneficiary in confidential relation to the testator, who is given the whole or the chief part of the estate devised. If several beneficiaries receive fairly equal portions, the statute does not apply, and the validity of the will is to be determined by the ordinary rules relating to fraud and undue influence. (*Sellards v. Kirby*, 82 Kan. 291, 108 Pac. 73; *Kelty v. Burgess*, 84 Kan. 678, 115 Pac. 583.) Treating the disposition of property made by Mrs. Stunkel as a virtual substitute for a will (*Madden v. Glathart*, 125 Kan. 466, 473, 265 Pac. 42), the principle of the statute does not apply. While Maud Stahlhut looked after her mother's business affairs, she was treated as other children who did not occupy a fiduciary relation to their mother, and against whom no charge of dominating constraint could be made; and under the conditions disclosed by the evidence, lack of independent advice was not an important circumstance. Besides that, Mrs. Stunkel had independent advice on the very subject of consequences of her proposed action, advice shown to have been competent by subsequent events. Her sister, Minnie Westerhold, who resided in Illinois, visited her on July 14, 1922, and remained nearly two weeks. Mrs. Stunkel told her sister she would not make a will; she intended to divide her property. Mrs. Westerhold said not to leave Lewis out; he might make trouble.

The judgment of the district court is affirmed.