SAMELSON, et al, Appellants, v. SAMELSON, Respondent

(23 N. W.2d 806.)

(File No. 8815.   Opinion filed July 31, 1946.)

Hugh S. Gamble, of Sioux Falls, and Andrew S. Bogue, of Parker, for plaintiffs and Appellants.

Bielski, Elliot & McQuillen, R. A. Bielski, Owen T. Lewis, Bailey, Voorhees, Woods & Fuller, and M. T. Woods, all of Sioux Falls, for defendant and Respondent.

WOHLHETER, Circuit Judge. This action was brought to set aside certain deeds of conveyance of real property and for an accounting of the rents and profits therefrom. The plaintiffs and appellants are the children of John F. Samelson, deceased, by his first wife, who died in 1901. The said John F. Samelson married the defendant and respondent in 1902 and they lived together as husband and wife until his death on December 31, 1943. Two of the deeds in question were executed on January 26, 1943, by Samelson and the respondent, husband and wife, grantors, to Hazel Robertson, their daughter, as grantee, and on the same date Hazel Robertson and her husband executed deeds to Samelson and the respondent reconveying the said real estate to them as "joint tenants and not as tenants in common with the right of survivorship." John F. Samelson died on December 30, 1943, and on February 3, 1944, procedings to terminate the life estate of John F. Samelson, deceased, were completed in the circuit court of Minnehaha County, and all his right, title and interest in said property was terminated and the entire ownership and title to the property was vested in the respondent by a judgment and decree of said circuit court.

The appellants contend (1) that the deeds herein mentioned were executed by said John F. Samelson and obtained by the respondent through undue influence arising from the confidential and fiduciary relationship of husband and wife existing between Samelson and the respondent, and (2) that the said John F. Samelson did not have any

independent advice from a competent or qualified person, devoted exclusively to his interests, to advise him at the time the deeds were executed. The appllants raised no question of the competency of John F. Samelson at the time the deeds in question were executed.

The trial court made findings of fact in substance as follows: that said John F. Samelson at the time of his death was over seventy-eight years old and for some time during the year prior to his death had been suffering from an illness which had confined him to his bed at intervals; that he was confined to his bed for approximately one month during January, 1943; that on January 25th he sent word through his daughter Hazel Robertson to R. A. Bielski, an attorney of Sioux Falls, South Dakota, with whom he had been acquainted, that he would like to see him; that the attorney called on him that evening and at that time Samelson's mind was clear and alert and he had full control of his mental faculties and was not acting under any duress or intimidation and all his acts and conversation with said attorney were entirely voluntary; that the attorney had previously had no conversation or contact of any kind with the respondent with reference to the business matter which Samelson then and there took up with the attorney; that Samelson advised the attorney that what little property he had he wanted to leave to his wife; that the attorney thereupon advised Samelson to put all his property into a joint tenancy with his wife and explained the meaning and effect of such a transfer; that in the evening of the following day the attorney returned to Samelson's house with the deeds prepared and after an explanation of the transaction by the attorney the deeds were executed and delivered creating such joint tenancy and that at that time said Samelson was in full possession of his mental process, was fully aware of what he was doing and acted entirely of his own volition; that he personally employed the attorney for the purpose of the transaction involved and that the respondent had nothing to do with the employment of said attorney and had had no previous conversations with the attorney regarding the signing of the deeds in question; that the attorney subsequently caused the deeds to be recorded; that Samelson

recovered from his illness during the early part of February, 1943, and again went about his work as a carpenter and drove and operated his automobile as usual; that in August, 1943, his physician definitely determined that he was afflicted with cancer of the stomach but that said Samelson was never advised even to the date of his death that he had a cancer of the stomach and that the respondent did not know of that fact until subsequent to August, 1943; that the said Samelson at the time of executing said deeds and at all times until a few hours before his death remained vigorous mentally; that he was at all times a strong minded independent acting man, alert, intelligent and understanding and at all times knew the nature and character of his acts and doings and that his acts in creating said joint tenancy were voluntary and of his own free will and were substantially in accordance with his intentions and desires which had been maintained by him for approximately thirty years as shown by a will which was executed by him some thirty years previously, and by other memoranda in his own hand writing, and that the said Samelson was not persuaded, induced or prevailed upon by the respondent or by the attorney or by any other person in executing the deeds creating such joint tenancy.

These findings are amply sustained by the evidence which leaves the appellants relying solely upon the contention that the confidential relationship of husband and wife between the parties, as a matter of law, rendered the transaction void and that rescession thereof must be granted.

■ The general rule in such cases appears to be that where the husband conveys property to the wife, the mere relationship of husband and wife does not constitute prima facie evidence of undue influence as to the wife. 26 C. J. S., Deeds, § 193, p. 616.

■ Here as in all cases of this type, fraud and undue influence must be proved, neither is presumed. However, the fact that such a confidential and fiduciary relationship was present is a matter to be considered and carefully scrutinized by courts of equity. There is no reason to believe that the trial court did not consider and carefully scru-

tinize any inference which might arise from the relationship existing betwen the decedent and the respondent.

In the case of Taylor v. Taylor, 66 Cal. App.2d 390, 152 P.2d 480, 483, the court said: "If it be conceded that they stood in the relation of husband and wife from the incipiency of their wedlock, no advantage from such concession inures to appellant. The marriage relation does not of itself raise a presumption of undue influence. McDougall v. McDougall, 135 Cal. 316, 67 P. 778. The proof itself must show such unfairness of the transaction as will tend to establish that the wrongful spouse made use of the confidence reposed for the purpose of gaining an unreasonable advantage over his mate. * * * The influence presumed to have been exercised by a wife over her husband is that which is superinduced by the marriage relation, 'generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other.' Such influence is presumed to have been undue only when his confidence in her is subsequently violated. (Cases cited). Inasmuch as respondent's conduct was honorable, we may not presume the deed in question to be void merely because the parties were dwelling together in the marriage relation."

■■ As said in Bentson v. Ellenstein, 215 Minn. 376, 10 N. W.2d 282, 283, where the court had under consideration the effect of a confidential relationship: "The general rule appears to be that the mere existence of a confidential relationship does not, as a matter of law, operate to bar the right of a beneficiary to receive a gift. If the donor was at the time of sound mind and clearly understood the transaction and exercised a free will in the act, being under no restraint or undue influence, such gift will be supported. 28 C. J., Gifts, p. 653, § 51; 24 Am. Jur., Gifts, pp. 756, 757, § 49. The fact that such a confidential and fiduciary relationship was present in this case was a matter to be considered by the trier of fact along with other evidence, but it is not conclusive against the donee, though all such transactions are carefully scrutinized by a court of equity."

See also Hatt v. Hatt, et al., Iowa, 265 N. W. 640; Harper v. Robinson, 275 Mich. 623, 267 N. W. 575; Berg et al., v.

Berg, 201 Minn. 179, 275 N. W. 836; Stanley et al. v. Stanley et al., 131 Kan. 71, 289 P. 406; Hass et al. v. Hass, 248 Wis. 212, 21 N. W.2d 398, 22 N. W.2d 151. Nowhere in the evidence in this case is there any intimation that the respondent persuaded or urged the decedent to execute the deeds in question. Neither is it shown that she occupied a position to dominate or exert an influence over him in his business affairs.

The contention of the appellants that the decedent had no independent, disinterested advice becomes immaterial by reason of the finding that there was no undue influence exercised over the decedent in executing the deeds. Bentson v. Ellenstein, supra; Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918.

Judgment affirmed.

WOHLHETER, Circuit Judge, sitting for POLLEY, J.