No. 47,336

In the Matter of the Estate of Blanche Barclay, Deceased. (MARY HELEN DIMAGGIO and JOSEPH H. KEEFER, *Appellants*, v. EDWARD H. POWERS, Individually and as Executor of the Estate of Blanche Barclay, RICHARD C. KEEFER and JAMES KEEFER, *Appellees.*)

(523 P. 2d 876)

Opinion filed June 15, 1974.

*John F. Steineger, Jr.*, of Steineger & Reid, of Kansas City, argued the cause, and *Reid F. Holbrook*, of the same firm, and *Max Von Erdmannsdorf* and *Wayne P. Kuhlman*, of Von Erdmannsdorf & Kuhlman, of Kansas City, Missouri, were with him on the brief for the appellants.

*Robert E. Fabian*, of McAnany, Van Cleave & Phillips, of Kansas City, argued the cause, and *Edward H. Powers, Sr.*, of Kansas City, was with him on the brief for appellee, Edward H. Powers, Sr.

*Charles S. Schnider,* of Schnider, Shamberg & May, of Kansas City, was on the brief for appellee, Richard C. Keefer.

*Bill D. Robinson, Jr.,* of Kansas City, was on the brief, for appellee, James Keefer.

The opinion of the court was delivered by

KAUL, J.: This action was brought to contest the validity of the will and codicil of Blanche Barclay, deceased. The controversy stems from the fact that the attorney who was the scrivener of the will and codicil was named as a beneficiary—a circumstance which frequently gives rise to such litigation. The sole question presented is whether the appellee Edward H. Powers, Sr., is the principal beneficiary in the will within the meaning of K. S. A. 59-605.

Mrs. Barclay had been a client of Mr. Powers for many years prior to her death on March 21, 1972. At the time of her death the next of kin of Mrs. Barclay consisted of three nephews: Richard C. Keefer; James E. Keefer,. and Joseph H. Keefer; and one niece, Mary Helen DiMaggio. The will in question was drafted by Mr. Powers and executed in his office by Mrs. Barclay on May 19, 1969. Specific bequests were made to each of Mrs. Barclay's nephews and her niece. Several grandnephews were also recipients of specific bequests. A long time friend of testatrix, Lela Stockwood, was devised a parcel of real estate. Mr. Powers was named residuary legatee and nominated executor of the will.

On May 19, 1971, a codicil to the 1969 will was drafted by Mr. Powers and executed by Mrs. Barclay. The codicil confirmed and ratified the 1969 will in every respect except insofar as any part of said will was inconsistent with the codicil. In general the codicil deleted the specific bequests made to the grandnephews and made adjustments with respect to other specific bequests. In some instances property devised in the will had been sold prior to the execution of the codicil. The bequest to Lela Stockwood was changed from a specific devise of real estate to a bequest of $3,000.00 in cash.

Following the death of Mrs. Barclay petitions for the probate of the will and codicil and for the appointment of a special administrator were filed on March 23, 1972. The will and codicil were admitted to probate on April 26, 1972. Appraisers were appointed and on June 2, 1972, an inventory and appraisement of the assets of the estate were filed. On October 27, 1972, Mary Helen DiMaggio and Joseph H. Keefer, appellants herein, filed their petitions to

set aside and vacate the order admitting the will and codicil to probate. On November 16, 1972, Federal estate taxes in the amount of $130,753.15 were paid to the Internal Revenue Service. The record indicates that appellants also filed an appeal from the order of the probate court admitting the will and codicil to probate. Both matters were certified to the district court for trial and consolidated on a stipulation that issues therein were identical. On affidavits filed first by appellant DiMaggio and later by appellant Joseph H. Keefer, the matter was reassigned from one division to another and was finally assigned to division No. 4 of the district court for trial.

In their petition appellants alleged that the total appraised value of the estate amounted to approximately $628,994.75. They further alleged that Mr. Powers was a confidential and legal adviser of the testatrix; that he was the beneficiary of the residuum estate; that the value of the residuum far exceeded the dollar value of any devise and bequest to any other heirs-at-law; and exceeded the total value of all devises and bequests to all other heirs and strangers combined.

Appellants further alleged that the last will and codicil of deceased were invalid under the provisions of K. S. A. 59-605 in that Mr. Powers prepared the will and codicil naming himself the principal beneficiary to the detriment of the heirs-at-law of Blanche Barclay; that there was no affirmative showing that the testatrix had read or knew the contents of her will or that she had independent advice with reference thereto; and that the probate court was without jurisdiction to admit the will and codicil to probate.

In pretrial proceedings the trial court narrowed the issue to be determined to the sole question whether Mr. Powers was the principal beneficiary, reserving the question of independent advice. In this posture the case came on for trial on May 11, 1973. The facts presented to the trial court were essentially undisputed.

The inventory and appraisement were submitted in evidence before the trial court. The specific bequests according to the appraisement amounted to the total sum of $291,167.00. The appraised value of each specific bequest is as follows:

| | |
|---|---|
| Richard C. Keefer | $144,390.97 |
| James Keefer | $105,000.00 |
| Joseph Keefer | $ 19,388.16 |
| Mary Helen DiMaggio | $ 19,388.16 |
| Lela Stockwood | $ 3,000.00 |

Subtracting the total of the specific bequests from the appraised value of the estate left a gross residue of $326,337.19, or approximately fifty-four percent of the gross estate. Appellants contended before the trial court and now on appeal that the gross residue is the figure to be used in determining whether Mr. Powers is the principal beneficiary. Mr. Powers and the other appellees, on the other hand, contend that under the express directions of the will all taxes and costs of administration are to be paid from the assets of the residue and that the proper measurement for ascertaining the principal beneficiary in this case is the remaining or net residue. At the trial, Mr. Powers presented a recapitulation of the estimated expenses chargeable to the estate including $130,753.15 Federal estate taxes, which had been paid, and estimated Kansas inheritance taxes amounting to $39,992.47. The grand total of expenses, estimated and paid, amounted to $246,692.12 leaving a net residue to Mr. Powers of $79,645.47. At the time of trial a claim against the estate in the amount of $47,500.00 had been allowed by the probate court and was pending on appeal in the district court. If the claim were finally allowed it would have reduced the residue to $32,147.07, as found by the trial court. On oral argument we were informed that the matter has been settled by compromise on a fifty percent basis, thus the residue amounted to $56,902.07 under the Powers's recapitulation. However, Mr. Powers points out that the costs of this appeal will further reduce the residue.

The record discloses that at the trial below counsel for appellants stated that he did not dispute the figures reflected in the recapitulation presented by Mr. Powers.

The trial court found in substance that Mr. Powers was the residuary legatee and that the residual estate must be determined on final distribution, rather than by calculating the value of the residual estate on the date of death without consideration of taxes and costs of administration. In rejecting the theory advanced by appellants the trial court stated:

"However, it seems inconceivable to me at least that we can use this measure for the reason that there isn't any possibility that the residue estate will be that which the person died seized as of the date of death unless there are other provisions made for the payment of all the expenses of the estate, administration, expenses of the last illness and burial, payment of all the claims, et cetera."

Appellants specify two points of error on appeal. They first contend the trial court erred as a mater of law in finding that Mr.

Powers as residuary beneficiary is not a "principal beneficiary" within the meaning of K. S. A. 59-605.

The statute, in essentially its present form, was enacted in 1907. It reads:

"If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

The trial court interpreted the statute to mean that the question of sole or principal beneficiary should be determined first and if the scrivener proves to be the sole or principal beneficiary then the further questions of testator's knowledge and independent advice must be resolved. We agree with the trial court's interpretation of the statute in this regard and find it to be in harmony with what was said concerning the statute in *Stunkel v. Stahlhut*, 128 Kan. 383, 277 Pac. 1023:

"Plaintiff says it did not appear that Mrs. Stunkel had independent advice. The statute relating to independent advice concerning wills applies to the single case of a will written or prepared by a beneficiary in confidential relation to the testator, who is given the whole or the chief part of the estate devised. If several beneficiaries receive fairly equal portions, the statute does not apply, and the validity of the will is to be determined by the ordinary rules relating to fraud and undue influence. . . ." (p. 389.)

To the same effect it was pointed out in *Kelty v. Burgess*, 84 Kan. 678, 115 Pac. 583, that where the confidential adviser was not shown to be the principal beneficiary of the will determination of what constitutes independent advice was unnecessary. The *Kelty* opinion further points out that the statute points to "the" principal beneficiary rather than to one of the principal beneficiaries.

In other words, the force of the statute does not come into play unless it is made to appear that the scrivener or the person who prepared the will was the confidential agent or legal adviser of the testator and is the sole or principal beneficiary in the will.

At this point, we pause to observe that in the instant case any claims of fraud or undue influence were abandoned by appellants in the court below.

K. S. A. 59-605 has been considered by this court in several cases, the most helpful of which is *Kelty v. Burgess*, supra. In *Kelty* the

action was brought to set aside the will of George W. Parker. As in the instant case, the will was written in the office and under the direction of Mr. Parker's attorney and confidential adviser, H. C. Burgess, who was also described as a "time-tried friend." Out of a gross estate of $14,500.00 Mr. Burgess was the receipient of a specific bequest in the amount of $2,000.00. The testator's niece was given the residue amounting to $10,200.00. The trial court found the niece was the principal beneficiary and, thus, Mr. Burgess could not be. In affirming the trial court's decision on appeal this court interpreted the statute and provided some guidelines for identifying the principal beneficiary in a will in this language:

". . . The plaintiff would have the statute read 'the sole or one of the principal beneficiaries.' The legislature did not so frame it. It applies to the single case of a will written or prepared by a person in a confidential relation to the testator, who is given the whole or the most considerable part of the estate devised. In all other instances the validity of the will is to be determined by the ordinary rules relating to fraud and undue influence.

"In determining whether or not a person is the principal beneficiary in a will the relative importance of his share to the individual shares of other beneficiaries and to the whole estate should be considered. If two or more persons should receive the bulk of an estate in fairly equal proportions no one of them would be the principal beneficiary. If a single person should receive a share slightly larger than any other but which constituted only a small part of the entire estate, he could not be regarded as the principal beneficiary. Probably more specific directions than these can not be given; certainly nothing more definite is required by the facts of this case." (pp. 681, 682.)

In *Klose v. Collins*, 137 Kan. 321, 20 P. 2d 494, the testator's estate was bequeathed to two beneficiaries, share and share alike. In considering the application of the statute in such a situation the court stated:

"It may be very seriously questioned whether either of the defendants in this case could be regarded as the sole or principal beneficiary as they were to share equally in the estate. . . ." (p. 328.)

References to the term "principal beneficiary" appearing in Kansas cases are summarized in 1 Bartlett's Kansas Probate Law and Practice [Rev. Ed.], Testamentary Power, § 390, wherein the author states:

". . . In determining whether or not a person is the principal beneficiary in a will the relative importance of his share to the individual shares of other beneficiaries and to the whole estate should be considered. If two or more persons should receive the bulk of an estate in fairly equal proportions no one of them would be the principal beneficiary. If a single person should receive a share slightly larger than any other but which constituted only a

small part of the entire estate, he could not be regarded as the principal beneficiary. . . ." (pp. 463, 464.)

Applying the foregoing to the instant case, whether the Power's bequest be $79,000.00 or $56,000.00 he cannot be considered the principal beneficiary in view of the fact that the specific bequests to Richard and James Keefer have been established at $144,000.00 and $105,000.00, respectively.

Concerning appellants' argument that for purposes of measuring the Power's bequest in terms of principal beneficiary the gross, rather than the net residue, should be considered—we must look to the directions of the will pertaining to residue. Appellants' argument in this regard is related to and will be discussed with their second point on appeal which they base on the premise of their claim that the executor had discretionary power to determine the size of the residuary estate. Appellants claim:

". . . it was error to find, under the facts given, that an Executor who was also the scrivener of the will, by exercise of his discretionary powers under the will, could reduce the size of the residuary estate of which he was the beneficiary so that he would not be a 'principal beneficiary' within the meaning of K. S. A. 59-605."

In considering appellants arguments a closer examination of Mrs. Barclay's will becomes necessary.

The will is comprised of twenty articles—the first of which contains the usual directions to the executor concerning expenses of last illness and burial arrangements. Articles Two to Ten, inclusive, set out the specific bequests. Article Eleven provides that seven parcels of real estate described therein should become a part of the residue and disposed of along with the remainder of the residue of testator's estate; article Twelve provides in the same manner for the disposition of certain items of personal property listed therein. Article Thirteen restates that property listed in articles Eleven and Twelve "shall not be subject to specific bequests" and, further, that any property owned at time of death and not made the subject of specific bequests, shall become a part of the residue. Article Fourteen protects against errors in the description of real estate. Article Fifteen provides for possession, care and responsibility for all real estate to be in the executor until the estate is closed when possession is to be delivered to the specific devisees.

The Sixteenth and Seventeenth articles deal with the lapsing of specific bequests, the payment of estate and inheritance taxes, the order of appropriation of assets, if necessary, for the payment of

taxes and expenses and the bequest of the residuary estate. These articles are the crux of the lawsuit and are quoted in full:

"SIXTEENTH: If any real estate made the subject of specific bequest herein before set out is not owned by me at the time of my death, then said specific bequest is void and of no effect and there shall be no obligation to my estate for the value represented in said specific bequest. It is my further express and direct intention that the authority of my executor, hereinafter named, to sell any of the real estate made the subject of specific bequests shall be inviolate and shall supersede any such specific bequest. I make this specific and clear reservation for the reason that it may be necessary for such executor to sell any such real estate to satisfy obligations of my estate to the Federal or State Governments for Estate and Inheritance taxes; or for the further reason of the equitable management of the said estate at his direction.

"SEVENTEENTH: All the rest, residue and remainder of my estate, including the real estate listed in the Eleventh paragraph of this will, any and all insurance which I may own, or which is payable to my estate, all corporate stocks of any description; debts due and owing me, mortgages on real or personal property, all cash and savings accounts, and any and all other property, real, personal or mixed, which I may own at the time of my death and not specifically devised in this will, I give, devise and bequeath, and direct the disposal of in the following manner, to-wit:

"It is my desire that the obligation of my estate to the Federal and State Governments for Estate and Inheritance taxes be satisfied to every extent practicable and possible from the residue of my estate, unless conditions economic or otherwise existing at or after the date of my death, make it expedient for other property hereinbefore specifically devised be disposed of for that purpose.

"For that reason, I hereby invest my executor, hereinafter named, with the power of sale without the intervention of the Probate Court, of all real and personal property necessary to accomplish this objective.

"With reference to the specific bequests of real estate hereinbefore set out in this will, I hereby invest my executor hereinafter named with the definite authority and power in the payment of Federal Estate Tax and State Inheritance Tax on my estate, at his option, to impose upon each specific bequest of real estate a responsibility for the payment of such estate and inheritance taxes. It is my intention that such responsibility shall extend to the proportion of appraisal value as such real estate specifically devised bears to the total appraised value of all my real estate as is contained in my estate. It is my intention that my executor, at his option, may determine such percentage responsibility for each parcel of real estate specifically devised, and make demand upon the devisee of such real estate for the payment of the proportion of inheritance tax as such real estate bears to the total tax obligation. If such devisee fails to pay such tax, then it is my clear intention that my executor shall have the power to sell such real estate specifically devised and from the proceeds of such sale deduct from such sales price percentage responsibility for inheritance tax and that the remainder of the proceeds of such sale shall be distributed to said specific devisee at the final distribution of my estate. In the event that the sales price of any such real estate specifically devised does not equal its appraised value, then the percentage of responsibility of such parcel

of real estate as it relates to the total responsibility for tax shall be determined on the basis of its actual sales price.

"By the same method, I instruct him to pay all my just debts and expenses connected with the administration of my estate. My executor shall have the authority to mortgage any property in my estate as may be necessary.

"After the satisfaction of specific bequests, in the manner as hereinbefore set out; after the payment of all taxes, both Federal and State, and the payment of all just claims against my estate, including the costs of administration thereof, I give, devise and bequeath the remainder of all such residue to Edward H. Powers, Attorney at Law, of Kansas City, Kansas."

A careful reading of the foregoing articles clearly reveals the intention of the testatrix to exonerate to every extent practicable and possible the specific bequests from any burden of estate and inheritance taxes. It is true that in article Sixteen authority to sell any real estate was given to the executor, but it was clearly limited by the reservation inserted by the testatrix in the same article.

In article Seventeen power of sale is also conferred upon the executor, but here again the power extended must be read together with the reservations and reasons expressed for the conference of such power.

The concluding paragraph of article Seventeen, in which the gift of the residuum to Mr. Powers is actually set forth, the intentions of the testatrix concerning the residuum are explicitly stated. It is made clear that the testatrix was giving only the residuum remaining after the satisfaction of specific bequests and payment of all taxes, claims and costs of administration. The only qualification being that the properties listed in articles Eleven and Twelve, although bearing the burden of residue in all other respects, were not to be the subject of specific bequests. In other words, this remaining residue constituted the bequest to Powers and not the gross residue as contended by appellants. The residue given is defined and established by the terms of the will itself. The right, stemming from the power to sell, to invade property included in the specific bequests, is contingent upon the exhaustion of the residue at which point the executor was empowered to sell in conformity with equitable management of the estate. The exercise of discretion with respect to the power of sale does not devolve upon the executor unless and until it became necessary to dispose of property to meet the obligations enumerated. If the residuum becomes insufficient to pay estate and inheritance taxes, the executor is empowered to charge specific bequests on a percentage basis, and if the particular specific devisee fails to pay such tax, the executor

is authorized to sell such real estate specifically devised, deduct the percentage of taxes burdened thereon and remit the balance to the particular specific devisee. These provisions and directions to the executor appear in the final paragraph of article Seventeen. The executor has no discretionary power of sale under the will to sell real estate not in the residue unless it is necessary to pay taxes and claims. The executor has no alternative but to pay all claims against the estate out of the residue unless and until the residue becomes insufficient to meet those demands.

In this case the will specifies the items to be paid from the residue; if it had not done so the order of appropriation of property for the payment of debts and claims provided for in K. S. A. 1973 Supp. 59-1405 would control. The result reached, except for the payment of inheritance taxes, would be the same. (*In re Estate of West*, 203 Kan. 404, 454 P. 2d 462.)

The language pertaining to residue employed in the instant will conforms with the generally accepted definition of the term set forth in 57 Am. Jur., Wills, § 1415, as follows:

"The residue of an estate may be defined as that which remains after discharging all legal and testamentary claims of the estate or, in other words, that which is left after the payment of charges, debts, and particular legacies. The benefaction conferred by the residuary clause of a will is only that which remains after all paramount claims upon the estate of the testator are satisfied. . . ." (pp. 946, 947.)

See, also, 6 Page on Wills (Bowe-Parker [Revision]), Lapsed and Void Devises and Legacies, § 50.16, pp. 93-95.

While this court has not precisely defined the term "residue"; references made to the meaning of the term in the case of *In re Estate of West*, supra, are in harmony with the foregoing definition.

Since the bequest to Mr. Powers was the remainder of the residue —a sum substantially less than two of the specific bequests—he cannot be said to be the principal beneficiary under the facts and applicable law.

The judgment is affirmed.